Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
[Additional Captions on Signature Page]

*Attorney for Plaintiff Shiva Stein*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIVA STEIN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:18-cv-01453 |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| CALLIDUS SOFTWARE INC., CHARLES M. BOESENBERG, LESLIE J. STRETCH, MARK A. CULHANE, KEVIN M. KLAUSMEYER, NINA L. RICHARDSON, MURRAY D. RODE, JAMES D. WHITE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Shiva Stein ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of herself and the other public holders of the common stock of Callidus Software Inc. ("Callidus" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Callidus, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Callidus and SAP America, Inc. ("SAP").

2.      On January 29, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $36.00 in cash for each share of Callidus stock they own (the "Merger Consideration"), comprising a total enterprise value of $2.4 billion.

3.      On February 22, 2018, in order to convince Callidus shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Definitive Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.   The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially

1

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  incomplete and misleading.

2      5.    In particular, the Proxy contains materially incomplete and misleading information

3  concerning the financial projections for the Company that were prepared by the Company and

4  relied upon by the Board in recommending the Company's shareholders vote in favor of the

5  Proposed Merger.  The financial projections were also utilized by Callidus's financial advisor,

6  Qatalyst Partners LP ("Qatalyst Partners"), in conducting the valuation analyses in support of its

7  fairness opinion.

8      6.    It is imperative that the material information that has been omitted from the Proxy

9  is disclosed prior to the forthcoming shareholder vote in order to allow the Company's

10 shareholders to make an informed decision regarding the Proposed Merger.

11     7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

12 Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants'

13 violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9).

14 Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger

15 and taking any steps to consummate the Proposed Merger unless, and until, the material

16 information discussed below is disclosed to Callidus shareholders sufficiently in advance of the

17 vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover

18 damages resulting from the Defendants' violations of the Exchange Act.

19                          **JURISDICTION AND VENUE**

20     8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

21 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

22 violations of Section 14(a) and 20(a) of the Exchange Act.

23     9.    Personal jurisdiction exists over each Defendant either because the Defendant

24 conducts business in or maintains operations in this District or is an individual who is either present

25 in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

26 to render the exercise of jurisdiction over Defendant by this Court permissible under traditional

27 notions of fair play and substantial justice.

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Callidus is headquartered in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a holder of Callidus common stock.

12.    Defendant Callidus is incorporated in Delaware and maintains its principal executive offices at 4140 Dublin Boulevard, Suite 400, Dublin, California 94568. The Company's common stock trades on the Nasdaq Stock Market under the ticker symbol "CALD."

13.    Individual Defendant Charles M. Boesenberg has served as Chairman of the Board since 2008, and as a director of the Company since 2006.

14.    Individual Defendant Leslie J. Stretch has served as President and Chief Executive Officer since 2007, and as a director of the Company since July 2008.

15.    Individual Defendant Mark A. Culhane has served as a director of the Company since 2010.

16.    Individual Defendant Kevin M. Klausmeyer has served as a director of the Company since 2013.

17.    Individual Defendant Nina L. Richardson has served as a director of the Company since February 2017.

18.    Individual Defendant Murray D. Rode has served as a director of the Company since June 2014.

19.    Individual Defendant James D. White has served as a director of the Company since July 2016.

20.    The Individual Defendants referred to in paragraphs 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**CLASS ACTION ALLEGATIONS**

21.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of Callidus (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of February 15, 2018, there were approximately 66,460,419 shares of Callidus common stock outstanding, held collectively by approximately 19 stockholders of record. The actual number of public shareholders of Callidus will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.      The Proposed Merger**

23.     Callidus is a provider of cloud-based sales, marketing, learning and customer experience solutions. The Company, which does business as CallidusCloud, enables its customers to manage their Lead to Money process with a suite of solutions that identifies leads, trains personnel, implements territory and quota plans, enables sales forces, automates configuration pricing and quoting, manages contracts, streamlines sales compensation, captures customer feedback and provides predictive analytics for competitive advantage. Lead to Money is a process designed to help companies respond to the changing role of sales and marketing.

24.     On January 29, 2018, Callidus and SAP issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> DUBLIN, Calif., and WALLDORF, Germany, Jan. 29, 2018 /PRNewswire/ -- SAP SE (NYSE: SAP) and Callidus Software Inc. (doing business as CallidusCloud®) (Nasdaq:     CALD) today

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

announced that SAP America, Inc. has entered into an agreement to acquire CallidusCloud, the leader in cloud-based Lead to Money (Quote-to-Cash) solutions.

The CallidusCloud board of directors has unanimously approved the transaction. The per share purchase price of $36.00 represents a 21% premium over the 30-day volume weighted average price per share and a 28% premium over CallidusCloud's 90-day volume weighted average price per share. The per share price represents an enterprise value of approximately $2.4 billion. SAP has elected to fund the transaction with existing cash balances and an acquisition term loan. The transaction is expected to close in the second quarter of 2018, subject to approval from CallidusCloud stockholders, clearances by the relevant regulatory authorities, and other customary closing conditions. The transaction is expected to be essentially neutral to SAP's non-IFRS earnings per share for fiscal 2018 and accretive to SAP's non-IFRS earnings per share for fiscal 2019.

[ . . . ]

**Statements by the Chief Executive Officers**

"SAP is connecting the back office to the front office in this consumer-driven growth revolution," said Bill McDermott, CEO of SAP. "Our customers are focused on reinventing sales, service, marketing, and commerce. The addition of CallidusCloud aligns perfectly to SAP's innovation strategy to transform the front office. SAP gives CallidusCloud the global scale to accelerate its already impressive growth. These two strong companies will be better together, help the world run better and improve people's lives."

CallidusCloud CEO Leslie Stretch said: "We are super excited to join forces with SAP. This move gives customers precisely what they want, the market leading Sales Performance (SPM), Sales Execution (CPQ) and Sales Enablement clouds combined with SAP Hybris and S/4HANA. This is true Lead to Money, beyond CRM and beyond Quote-to-Cash. It's the joined-up Front Office and Back Office Cloud everyone needs for 21st Century Business. In addition, the purchase price provides substantial value to our stockholders."

25.    The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  For instance, the Company ended the fourth quarter of 2017 with $69.5 million in total revenue, a double-digit increase year-over-year compared with the same period in 2016.  Moreover, the Company has experienced **double-digit growth** in Sales Growth, Gross Income Growth, and Assets – Total – Growth **every year since 2014**.

26.    In sum, it appears that Callidus is well-positioned for financial growth, and that the

6

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Merger Consideration fails to adequately compensate the Company's shareholders.    It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.    The Materially Incomplete and Misleading Proxy

27.    On February 22, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Projections that Violate Regulation G and SEC Rule 14a-9*

28.    The Proxy discloses certain financial projections for the Company on pages 45-47.  However, the Proxy fails to provide material information concerning the projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  Proxy 45, 36.

29.    Specifically, the Proxy provides values for: (1) SaaS Revenue, (2) Non-GAAP Operating Income, and (3) Unlevered Free Cash Flow, but fails to provide (i) the values of the line items used to calculate these non-GAAP measures, nor (ii) a reconciliation of the non-GAAP measures to the most comparable GAAP equivalent, in direct violation of Regulation G and consequently Section 14(a).  Proxy 47.

30.    With regards to SaaS Revenue, the Company defines it as "Total Revenue minus maintenance, services and licensing revenue."  Proxy 47.  However, the Proxy does not provide the values for maintenance, services, nor licensing revenue, nor a reconciliation of SaaS Revenue

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1  to its most comparable GAAP equivalent.  Proxy 47.

2      31.    The Company defines Non-GAAP Operating Income by explaining that it

3  excludes: "stock-based compensation expense, restructuring costs, patent litigation and settlement

4  costs, non-cash amortization of acquired intangibles, acquisition-related costs and other non-

5  recurring expenses."  Proxy 47.  However, the Proxy fails to disclose what financial metric from

6  which those line items are being excluded (i.e. the starting point for its calculation), the values of

7  the excluded line items, nor a reconciliation of Non-GAAP Operating Income to its GAAP

8  equivalent.

9      32.    With regards to Unlevered Free Cash Flow ("UFCF"), the Company states:

10         Using the information set forth in the Projections, Qatalyst Partners
           calculated Unlevered Free Cash Flow for fiscal years 2018 through
11         2023, which calculations were approved by Callidus for Qatalyst
           Partners' use. Unlevered Free Cash Flow is calculated as Non-GAAP
12         Operating Income less (i) cash taxes, less (ii) capital expenditures, plus
           (iii) depreciation, less (iv) investment in working capital. The
13         Unlevered Free Cash Flow in terminal year 2023 assumes an effective
           tax rate of 17.5%.
14

15  Proxy 47.   However, the Company fails to disclose the values of the cash taxes, capital

16  expenditures, depreciation, and investment in working capital line items nor sets forth a

17  reconciliation of UFCF to its most comparable GAAP equivalent.  Because the calculations for

18  UFCF were made by Qatalyst Partners and adopted by the Board, no exemption from Regulation

19  G is applicable.

20      33.    When a company discloses non-GAAP financial measures in a proxy statement that

21  was relied on by a board of directors to recommend that shareholders exercise their corporate

22  suffrage rights in a particular manner, the Company must, pursuant to SEC regulatory mandates,

23  also disclose all projections and information necessary to make the non-GAAP measures not

24  misleading, and must provide a reconciliation (by schedule or other clearly understandable

25  method) of the differences between the non-GAAP financial measure disclosed or released with

26  the most comparable financial measure or measures calculated and presented in accordance with

27  GAAP.  17 C.F.R. § 244.100.

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

34.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Callidus included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

(emphasis added).

35.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption,

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.
[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  where Regulation G would not apply.[3]

2       36.    More importantly, the C&DI clarifies when the business combination exemption

3  does not apply:

>       There is an exemption from Regulation G and Item 10(e) of Regulation
>       S-K for non-GAAP financial measures disclosed in communications
>       subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and
>       14d-2(b)(2); it is also intended to apply to communications subject to
>       Exchange Act Rule 14d-9(a)(2). This exemption does not extend
>       beyond such communications. Consequently, if the same non-GAAP
>       financial measure that was included in a communication filed under
>       one of those rules is also disclosed in a Securities Act registration
>       statement, proxy statement, or tender offer statement, this exemption
>       from Regulation G and Item 10(e) of Regulation S-K would not be
>       available for that non-GAAP financial measure.

10  *Id.*

11      37.    Thus, the C&DI makes clear that the so-called "business combination" exemption

12  from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent

13  that a third-party such as a financial advisor has utilized projected non-GAAP financial measures

14  to render a report or opinion to the Board.  To the extent the Board also examined and relied on

15  internal financial projections to recommend a transaction, Regulation G applies.

16      38.    Because the Proxy explicitly discloses that the Board considered "the financial

17  projections prepared by our management" to recommend voting in favor of the Merger Agreement,

18  no exemption from Regulation G is applicable. Proxy 36.

19      39.    Thus, in order to bring the Proxy into compliance with Regulation G as well as cure

20  the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted

21  information on pages 45-47, Defendants must provide a reconciliation table of the non-GAAP

22  measures to the most comparable GAAP measures.

23      40.    At the very least, the Company must disclose the line item projections for the

24  financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such

25  projections are necessary to make the non-GAAP projections included in the Proxy not misleading.

26  _____

27  [3]    *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017),
    *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101.  To be sure,
28  there are other situations where Regulation G would not apply but are not applicable here.

10

1    Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as Callidus

2    shareholders are cautioned:

> Some of the Projections are "non-GAAP financial measures," which are financial performance measures that are not calculated in accordance with accounting principles generally accepted in the United States ("GAAP"). These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures, and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures, because they exclude charges and credits that are required to be included in a GAAP presentation. Accordingly, these non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP. . . .

10    Proxy 46-47.

11         ***The Materially Misleading Financial Analyses***

12         41.    Moreover, certain information set forth in the projections were also utilized by the

13    Company's financial advisor, Qatalyst Partners, to render a report to the Board of its opinion

14    regarding the fairness of the Proposed Merger. As explained above, Qatalyst Partners utilized

15    "information set forth in the Projections" provided by management to calculate the Company's

16    unlevered free cash flows ("UFCF"). Proxy 47. These unlevered free cash flows were then used

17    by Qatalyst Partners to perform a *Discounted Cash Flow Analysis* ("DCF"). Proxy 41.[4] However,

18    the opacity concerning the Company's internal projections renders the valuation analyses

19    described below materially incomplete and misleading, particularly as companies formulate non-

20    GAAP metrics differently. Once a proxy discloses internal projections relied upon by the Board,

21    those projections must be complete and accurate.

22         42.    With respect to Qatalyst Partners' *Discounted Cash Flow Analysis*, the Proxy

23    provides a lengthy explanation as to how Qatalyst Partners made its calculation. Proxy 41.

24    However, the Proxy is silent as to the values of the line items and calculations of UFCF used in its

25    DCF analysis, a violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9). Because they were not

---

[4]    Plaintiff alleges, based on the clear and plain language of Regulation G, that all non-GAAP internal financial projections that were relied on by the Board must comply with Regulation G, even if Qatalyst Partners also utilized those financial projections.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    disclosed, shareholders are unable to discern the veracity of Qatalyst Partners' *Discounted Cash*

2    *Flow Analysis*.  Thus, the Company's shareholders are being materially misled regarding the value

3    of the Company.

4        43.    These key inputs are material to Callidus shareholders, and their omission renders

5    the summary of Qatalyst Partners' DCF valuation analysis incomplete and misleading.  As a

6    highly-respected professor explained in one of the most thorough law review articles regarding the

7    fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in

8    a discounted cash flow analysis a banker takes management's projections, and then makes several

9    key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff,

10   *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate

11   discount rate, and the terminal value . . . ." *Id*.  As Professor Davidoff explains:

12               There is substantial leeway to determine each of these, and any change
13               can markedly affect the discounted cash flow value . . . . The substantial
                 discretion and lack of guidelines and standards also makes the process
14               vulnerable to manipulation to arrive at the "right" answer for fairness.
                 This raises a further dilemma in light of the conflicted nature of the
15               investment banks who often provide these opinions.

16   *Id*. at 1577-78.

17       44.    Clearly, shareholders would find this information material since the Board's

18   unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in

19   part on the following:

20           •   the financial projections prepared by our management . . . .

21           •   our historical revenue and operating results and financial
22               prospects and the risks associated with achieving the
                 Projections, including the difficulty of recruiting and retaining
23               qualified personnel in a highly-competitive staffing market, the
                 risk that we might be unable to continue to increase our sales
24               force to achieve desired productivity levels and the significant
                 investments we would have to make to continue our growth
25               rate, including with respect to our learning and enablement
                 solutions; and . . . .

26           •   *Opinion of Qatalyst Partners*.    Our Board received the opinion
27               of Qatalyst Partners that as of January 29, 2018, and based upon
                 and subject to the assumptions made, procedures followed,

28

12

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1

2

3

4

> matters considered and limitations and qualifications of the review undertaken by Qatalyst Partners as set forth in its written opinion, the $36.00 per share cash consideration to be received by the holders of shares of our common stock, other than SAP or any affiliates of SAP, pursuant to, and in accordance with, the terms of the Merger Agreement was fair, from a financial point of view, to such holders. . . .

5    Proxy 36-37.

6          45.    In sum, the Proxy independently violates both: (i) Regulation G, which requires a

7    presentation and reconciliation of any non-GAAP financial measure to its most directly

8    comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders

9    certain statements, discussed above, materially incomplete and misleading.    As the Proxy

10   independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and

11   Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed

12   Merger from Callidus shareholders.

13         46.    Absent disclosure of the foregoing material information prior to the special

14   shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class

15   will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed

16   Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought

17   herein.

18                                         **<u>COUNT I</u>**

19   **(Against All Defendants for Violations of Section 14(a) of the Exchange Act
     and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

20

21         47.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

22   herein.

23         48.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

24   of the mails or by any means or instrumentality of interstate commerce or of any facility of a

25   national securities exchange or otherwise, in contravention of such rules and regulations as the

26   Commission may prescribe as necessary or appropriate in the public interest or for the protection

27   of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

28

13

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1 authorization in respect of any security (other than an exempted security) registered pursuant to

2 section 78l of this title." 15 U.S.C. § 78n(a)(1).

3      49.     As set forth above, the Proxy omits information required by SEC Regulation G, 17

4 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other

5 things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation

6 of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other

7 clearly understandable method" of the non-GAAP measure to the "most directly comparable"

8 GAAP measure. 17 C.F.R. § 244.100(a).

9      50.     The failure to reconcile the numerous non-GAAP financial measures included in

10 the Proxy violates Regulation G and constitutes a violation of Section 14(a).

11 **COUNT II**

12 **(Against All Defendants for Violations of Section 14(a) of the Exchange Act**

13 **and Rule 14a-9 Promulgated Thereunder)**

14      51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

15 herein.

16      52.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy

17 communications that contain "any statement which, at the time and in the light of the circumstances

18 under which it is made, is false or misleading with respect to any material fact, or which omits to

19 state any material fact necessary in order to make the statements therein not false or misleading."

20 17 C.F.R. § 240.14a-9.

21      53.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing]

22 public a non-GAAP financial measure that, taken together with the information accompanying that

23 measure, contains an untrue statement of a material fact or *omits to state a material fact necessary*

24 *in order to make the presentation of the non-GAAP financial measure . . . not misleading.*" 17

25 C.F.R. § 244.100(b) (emphasis added).

26      54.     Defendants have issued the Proxy with the intention of soliciting shareholder

27 support for the Proposed Merger. Each of the Defendants reviewed and authorized the

28

14

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

55.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

57.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

58.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59.    Callidus is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

60.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

61.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

62.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of Callidus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Callidus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1   recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were

2   thus directly involved in preparing the Proxy.

3         66.    In addition, as described herein and set forth at length in the Proxy, the Individual

4   Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

5   Proxy purports to describe the various issues and information that the Individual Defendants

6   reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

7   input on the content of those descriptions.

8         67.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

9   of the Exchange Act.

10        68.    As set forth above, the Individual Defendants had the ability to exercise control

11  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

12  their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

13  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

14  result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

15        69.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

16  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

17  and irreparable injury that Defendants' actions threaten to inflict.

18                                 **<u>PRAYER FOR RELIEF</u>**

19      **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

20        A.    Declaring that this action is properly maintainable as a Class Action and certifying

21  Plaintiff as Class Representative and his counsel as Class Counsel;

22        B.    Enjoining Defendants and all persons acting in concert with them from proceeding

23  with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and

24  until the Company discloses the material information discussed above which has been omitted from

25  the Proxy;

26        C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained

27  as a result of their wrongdoing;

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 6, 2018

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, New York 10016
Tel: 212-545-4600
Fax: 212-686-0114
Email: melwani@whafh.com

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _/s/ Benjamin Heikali_
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

18

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**